**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | | |
|---|---|---|
| TYLER MURKERSON,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER JAMES TEARE, individually; RADFORD STARK BROOKS, individually; and LEONARD C. WOOD a/k/a LENN WOOD, individually,<br><br>Defendants. | : | Civil Action File<br><br>No. _________________ |

# COMPLAINT

Plaintiff files this Complaint pursuant to 42 U.S.C. § 1983 for Defendants' violation of the rights and privileges afforded to Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution, when, acting under color of law and without a warrant, probable cause, arguable probable cause or even reasonable articulable suspicion, Defendants unlawfully seized Plaintiff Murkerson's person using excessive force. In seizing Plaintiff's person, Defendants used excessive force, in violation of the Fourth and Fourteenth Amendment to the United States Constitution.

**The Parties, Jurisdiction & Venue**

1. Plaintiff Murkerson is a citizen and resident of Georgia.

2. Defendant Teare is a citizen and resident of Coweta County, Georgia.

3. Defendant Teare is sued in his individual capacity only.

4. Defendant Teare is subject to the jurisdiction of this Court.

5. Defendant Brooks is a citizen and resident of Heard County, Georgia.

6. Defendant Brooks is sued in his individual capacity only.

7. Defendant Brooks is subject to the jurisdiction of this Court.

8. Defendant Leonard C. Wood a/k/a Lenn Wood ("Wood") is a citizen and resident of Coweta County, Georgia.

9. Defendant Wood is sued in his individual capacity only.

10. Defendant Wood is subject to the jurisdiction of this Court.

11. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this civil action arises under the Constitution and laws of the United States.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that Defendants reside in this judicial district and the events and/or omissions giving rise to this claim occurred in this district.

## Facts

### I. The "Arrest."

13. On February 6, 2023, Defendant Teare was a Deputy with the Coweta County Sheriff's Office.

14. On February 6, 2023, Defendant Brooks was a Deputy with the Coweta County Sheriff's Office.

15. On February 6, 2023, Defendant Wood was Sheriff of Coweta County.

16. On February 6, 2023, pursuant to Georgia statutory law, Defendant Wood was responsible for deputies of Coweta County, and their conduct.

17. On or around February 6, 2023, Plaintiff was driving towards the BP gas station ("BP") located at 4849 GA-34, Newnan, GA 30263.

18. On February 6, 2023, Plaintiff wore his seatbelt at all times while driving on a public road or highway.

19. On or around February 6, 2023, at approximately 8:43 AM Plaintiff pulled into the BP parking lot.

20. The BP parking lot is private property.

21. After Plaintiff pulled into the BP parking lot and his vehicle was entirely on BP property, Plaintiff unbuckled his seatbelt and proceeded towards gas pump #4.

22. As Plaintiff drove next to gas pump #4, completely on BP property, Defendant Teare drove his Coweta County Sheriff's Office patrol vehicle (the "patrol vehicle") behind Plaintiff's vehicle.

23. Plaintiff got out of his vehicle to begin pumping gas into his vehicle, at which point Defendant Teare got out of the patrol vehicle.

24. As Defendant Teare got out of the patrol vehicle, he yelled at Plaintiff for Plaintiff to get back into Plaintiff's vehicle.

25. Plaintiff complied.

26. Defendant Teare then approached Plaintiff's vehicle.

27. As Defendant Teare stood in the open door of Plaintiff's vehicle's driver's side, Defendant Teare stated "how about you don't give me a reason to stop you? You ever heard of that before? So, wear your seatbelt and you won't get pulled over. It's a very simple task."

28. Defendant Teare closed Plaintiff's vehicle's driver-side door and walked back to the patrol vehicle to issue Plaintiff a citation.

29. Shortly thereafter, and while Defendant Teare was still in the patrol vehicle, Defendant Brooks arrived on scene in a Coweta County Sheriff's Office patrol SUV (the "patrol SUV").

30. Upon arrival, Defendant Brooks parked the patrol SUV to the right of Defendant Teare's patrol vehicle.

31. Defendant Brooks got out of the patrol SUV and Defendant Teare told Defendant Brooks, “he’s being . . . uh, have him step out and sit on my car.”

32. When Defendant Teare asked Defendant Brooks to have Plaintiff get out of his vehicle and sit on Defendant Teare’s car, Plaintiff still had not committed any crime.

33. When Defendant Teare asked Defendant Brooks to have Plaintiff get out of his vehicle and sit on Defendant Teare’s car, neither Defendant Teare nor Defendant Brooks had any warrant, probable cause, arguable probable cause or even reasonable articulable suspicion that Plaintiff had committed any crime.

34. Defendant Brooks walked to the passenger-side door of Plaintiff’s vehicle.

35. The passenger in Plaintiff’s vehicle rolled down the window of the passenger door.

36. Plaintiff asked Defendant Brooks if he had a complaint form on him.

37. Defendant Brooks replied that he did not.

38. Plaintiff stated that Defendant Teare kept pulling Plaintiff over every time Plaintiff came to the BP.

39. Defendant Brooks replied, “that’s fine, if you would hop out and go have a seat on this hood, please.”

40. As Plaintiff complied and exited his vehicle, Defendant Brooks asked Plaintiff if he had any weapons on him.

41. Plaintiff told Defendant Brooks that he, Plaintiff, was not carrying any weapons.

42. As Plaintiff sat on the patrol vehicle, he realized he had a pocketknife in his front, right-side pocket of his pants.

43. Upon the realization that he had a pocketknife, Plaintiff asked Defendant Brooks to "come get this pocketknife off me" and pointed to his front right pocket.

44. Plaintiff raised his hoodie in the front.

45. Defendant Brooks responded, "just have a seat on the freakin' hood."

46. Plaintiff, again, tried to explain that he had a pocketknife in his pocket.

47. Before Plaintiff could say the word "pocketknife" a second time, Defendant Brooks became angered and yelled "have a seat on the hood!"

48. Defendant Brooks began walking towards Plaintiff.

49. As Defendant Brooks walked toward Plaintiff, Defendant Teare got out of the patrol vehicle.

50. At the same time, Plaintiff asked Defendant Brooks to take the pocketknife from Plaintiff.

51. As soon as Defendant Teare closed the driver-side door to the patrol vehicle, Defendant Teare stated "hey, 95 him, I'm done with his ass, 95 him."

52. Defendant Brooks grabbed Plaintiff's right hand and began putting Plaintiff's right hand behind Plaintiff's back.

53. Prior to Defendant Brooks grabbing Plaintiff, Defendant Teare did not tell Plaintiff that Plaintiff was under arrest.

54. Prior to Defendant Brooks grabbing Plaintiff, Defendant Brooks did not tell Plaintiff that Plaintiff was under arrest.

55. When Defendant Brooks grabbed Plaintiff, Plaintiff had no knowledge he was under arrest.

56. When Defendant Brooks grabbed Plaintiff, neither Defendant Brooks nor Defendant Teare had any warrant, probable cause, arguable probable cause or even reasonable articulable suspicion that Plaintiff had committed any crime.

57. Defendant Brooks immediately shoved Plaintiff toward the asphalt.

58. Defendant Brooks then shoved Plaintiff onto the asphalt.

59. Plaintiff's back laid flat on the asphalt with his back on the asphalt.

60. Defendant Brooks forced his left forearm against Plaintiff's neck.

61. Defendant Brooks pressed his body on top Plaintiff's body as Plaintiff laid on the asphalt with his forearm across Plaintiff's throat.

62. As Defendant Brooks had Plaintiff pinned under Defendant Brooks's full body weight of approximately 249 pounds, Plaintiff did not present any threat of physical harm to either Defendant, himself or anyone else.

63. Defendant Brooks told Plaintiff "I'm going to punch you in your fuckin' face."

64. Defendant Teare stated "I'm going to tase him."

65. When Defendant Teare drew his taser and pointed it at Plaintiff, Defendant Brooks had Plaintiff pinned to the asphalt with the full force of his 249-pound body so that Plaintiff did not present a threat of physical harm to anyone:




66. As Plaintiff lay on the asphalt with the weight of Brooks body on Plaintiff and Brooks's forearm across Plaintiff's throat, Defendant Teare tased Plaintiff.

67. Even though Plaintiff was not a threat of harm to anyone, Defendant Teare tased Plaintiff in Plaintiff's chest.

68. Even though Plaintiff was complying with Defendant Teare's and Defendant Brooks's directives, Defendant Teare tased Plaintiff in Plaintiff's chest.

69. Though neither Defendant had told Plaintiff that he was under arrest, Defendant Teare tased Plaintiff in Plaintiff's chest.

70. As Defendant Teare was still tasing Plaintiff, Defendant Brooks told Plaintiff to "put your fucking hands up, man."

71. As can be seen in the photograph below, even as Defendant Brooks's forearm was holding Plaintiff down, Plaintiff complied and put his hands up as much as he could with Defendant Brooks's body lying on top of Plaintiff's body.




72. With his hands up, Plaintiff wheezed out a barely audible "ok."

73. While still forcing his forearm against Plaintiff's neck, Defendant Brooks asked Plaintiff if he "was good."

74. As can be seen in the photograph below, Plaintiff attempted to answer and was able to wheeze out a barely audible "I'm good."




75. Defendant Brooks turned Plaintiff's body face down onto the asphalt and grabbed Plaintiff's hands.

76. Defendant Teare, using his left hand, held Plaintiff's neck down.

77. Defendant Teare, using his right hand, held the taser against Plaintiff's spine.

78. Defendant Brooks handcuffed Plaintiff.

79. Defendant Teare stated "real smart, dumbass."

80. Plaintiff, again, attempted to tell Defendants that he was trying to alert them about the pocketknife, but Defendant Teare kept interrupting Plaintiff.

81. Plaintiff stated, "I wanted you to get a knife off me so you wouldn't shoot me."

82. Defendant Teare responded "because you don't listen, that's the problem, because you don't listen."

83. Defendants lifted Plaintiff off the asphalt and placed Plaintiff onto the hood of the patrol SUV.

84. As Defendants forced Plaintiff face-down against the patrol SUV's hood, Plaintiff stated "I had a weapon, and I was trying to get y'all to get it off of me."

85. Defendants did not respond to Plaintiff's statement.

86. Plaintiff repeated that he was trying to get Defendants to take the pocketknife from Plaintiff.

87. Defendants, at the same time, responded with "that's not how it works" and "what did I tell you to do?"

88. Plaintiff stated, "I don't want y'all to shoot me!"

89. Defendant Brooks asked, "did I pull my gun or anything on you?"

90. Plaintiff responded, "y'all just beat my ass over me trying to get you to get a knife out of my pocket, you beat my ass."

91. Plaintiff walked wherever Defendants guided Plaintiff.

92. Defendants placed Plaintiff into the back of the patrol vehicle.

93. Defendant Brooks told Plaintiff to "have a seat."

94. Plaintiff complied and sat in the back of the patrol vehicle.

95. Plaintiff cooperated and placed his legs inside the patrol vehicle.

96. Defendant Brooks asked Plaintiff "why can't you listen?"

97. Defendant Brooks repeated his question.

98. Plaintiff responded, "I asked you to get a knife, I asked you to get a knife, you asked me if I had any weapons!"

99. Defendant Brooks put both hands in front of Plaintiff's face and asked, "can you shut up?"

100. Plaintiff asked Defendant Brooks to answer his question about the pocketknife.

101. Defendant Brooks responded, "I asked you, yes, I did."

102. Plaintiff stated, "and I forgot that I had a knife."

103. Again, Defendant Brooks put both hands in front of Plaintiff's face and asked, "can you shut up for a second?"

104. Plaintiff became silent.

105. Defendant Brooks stated, "I told you to have a seat on the hood of [Defendant Teare's] car, right? That does not give you a right to stand up and say, 'come get this knife before you shoot me' and start walking up."

106. Plaintiff responded that he did not start walking up to Defendant Brooks.

107. Again, Defendant Brooks put both hands in front of Plaintiff's face and said, "hold on, hold on."

108. Plaintiff asked Defendant Brooks if his body camera was activated.

109. Defendant Brooks closed the door to the patrol vehicle.

110. Defendants informed Plaintiff, for the first time, that he was under arrest after Plaintiff was in the back of the patrol vehicle.

111. Plaintiff did not know what "95 him" meant.

112. Any layperson would not know what "95 him" means.

113. Plaintiff did not know Defendants were arresting him when Defendant Brooks tackled Plaintiff.

114. Defendants, in slamming Plaintiff onto the asphalt, caused Plaintiff injuries, as can be seen in the photographs below.







115. Defendant Teare's tasing caused Plaintiff chest injuries, as can be seen in the photographs below.





116. Defendants' force in slamming Plaintiff to the ground caused Plaintiff such pain in his knee that Plaintiff required immediate medical attention.

## II. Georgia Seatbelt Law.

117. O.C.G.A. § 40-8-76.1(b) provides that “[e]ach occupant of the front seat of a passenger vehicle shall, **while such passenger vehicle is being operated on a public road, street, or highway** of this state, be restrained by a seat safety belt approved under Federal Motor Vehicle Safety Standard 208.” (emphasis added).

118. Failure to wear a seatbelt while driving on a public road, street, or highway is a misdemeanor.

119. Failure to wear a seatbelt while driving on a public road, street, or highway is not a felony.

120. Failure to wear a seatbelt while driving on a public road, street, or highway is not a crime of violence.

121. Failure to wear a seatbelt while driving on a public road, street, or highway is not a crime of any significant severity.

122. Failure to wear a seatbelt while driving on private property, such as the BP parking lot, is not a crime of any sort.

123. At all times on February 6, 2023, when Plaintiff was operating his vehicle on a public road, he wore his seatbelt.

124. At all times on February 6, 2023, when Plaintiff was operating his vehicle on a street, he wore his seatbelt.

125. At all times on February 6, 2023, when Plaintiff was operating his vehicle on a Georgia highway, he wore his seatbelt.

126. On February 6, 2023, neither Defendant Teare nor Defendant Brooks observed Plaintiff operating his vehicle on a Georgia highway/road without wearing a seatbelt.

127. On February 6, 2023, Plaintiff was charged with violating O.C.G.A. § 40-8-76.1, Safety Belts; Required Usage.

128. On February 6, 2023, Plaintiff was charged with three counts of violating O.C.G.A. § 16-10-24, Obstruction of Officers.

129. On June 26, 2023, the state court of Coweta County dismissed all four charges.

**III. Defendant Teare's and Defendant Brooks's Use of Force.**

130. On February 6, 2023, when Defendant Teare initially approached Plaintiff, Defendant Teare had no warrant for Plaintiff, no probable cause, no arguable probable cause or even reasonable articulable suspicion that Plaintiff had committed any crime because he had not observed Plaintiff breaking any laws.

131. On February 6, 2023, Defendant Teare had not seen or otherwise observed Plaintiff operating his vehicle on a public highway/road without wearing a seatbelt.

132. At no time during the On February 6, 2023, encounter with Plaintiff did Defendant Brooks have any warrant for Plaintiff, any probable cause, any arguable probable cause or even any reasonable articulable suspicion that Plaintiff had committed any crime.

133. Both Defendant Teare and Defendant Brooks were POST certified officers and had received training that driving on private property without a seatbelt is not a crime.

134. Because of their POST training, both Defendants knew that driving on private property without a seatbelt is not a crime.

135. Any reasonable law enforcement officer would know that driving on private property without a seatbelt is not a crime.

136. Georgia law allows individuals to actively resist any unlawful arrest and use whatever reasonable force is required to do so.

137. Any reasonable law enforcement officer would know that Georgia law allows individuals to resist unlawful arrests and to use whatever reasonable force is required to do so.

138. Because of their POST training and experience, both Defendant Teare and Defendant Brooks knew that Georgia law allows individuals to resist unlawful arrests and to use whatever reasonable force is required to do so.

139. Further, both Defendant Teare and Defendant Brooks knew that Georgia law allows individuals to resist unlawful arrests and to use whatever reasonable for is necessary because the Coweta County Sheriff's Office Policy and Operations Manual expressly provides that information to all deputies.

140. Although Plaintiff would have been within his legal rights to resist Defendants' unlawful actions on February 6, 2023, at no time during any part of the encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Plaintiff actively resist arrest.

141. At no time before tackling Plaintiff on February 6, 2023, did Defendant Teare or Defendant Brooks communicate to Plaintiff or inform Plaintiff that he was under arrest or even state that Plaintiff was under arrest – instead Defendant Brooks just approached Plaintiff from the back and grabbed Plaintiff.

142. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, was Plaintiff a threat to anyone's safety, including but not limited to Defendant Teare or Defendant Brooks.

143. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Defendant Teare or Defendant Brooks reasonably fear for their own safety or the safety of another person.

144. Given the circumstances present on February 6, 2023, no reasonable law enforcement officer would have believed that Plaintiff presented a threat to anyone's safety.

145. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Plaintiff attempt to escape.

146. Given the circumstances present on February 6, 2023, no reasonable law enforcement officer would have believed that Plaintiff made any attempt to escape.

147. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Defendant Teare or Defendant Brooks have any reasonable belief that Plaintiff had committed any crime of any severity.

148. Given the circumstances present on February 6, 2023, no reasonable law enforcement officer would have believed that Plaintiff had committed any crime of any sort, much less any crime of any severity.

149. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Defendant Teare or Defendant Brooks have any reason to believe Plaintiff was going to commit a forcible felony.

150. Given the circumstances present on February 6, 2023, no reasonable law enforcement officer would have believed Plaintiff was going to commit a forcible felony.

151. At no time during any part of the February 6, 2023, encounter between Plaintiff and Defendant Teare or Defendant Brooks, did Plaintiff present a threat of harm to either Defendant, himself or anyone else.

152. Given the circumstances present on February 6, 2023, no reasonable law enforcement officer would have believed Plaintiff presented a threat of harm to anyone.

## IV. Defendant Teare had Predisposed, Unaddressed Tendencies likely to Lead to the Use of Excessive Force and Defendant Wood Knew of those Tendencies.

### A. Defendant Teare Lacked Patience, Flexibility, Tolerance for Frustration and Rule Conformance and Defendant Wood Knew of those Problems.

153. As part of Defendant Teare's employment application, Coweta County Sheriff's Office processed a mandated Personnel Evaluation Profile ("PEP") on Defendant Teare on November 2, 2020.

154. PEP testing is used by over 600 law enforcement agencies across the United States to uncover disqualifying criteria and identify high risk applicants.

155. The socialization portion of the PEP relates to the applicant's "patience, flexibility, tolerance for frustration, and rule conformance."

156. A low score on the socialization portion of the PEP "highlights the need to explore, during the interview and with reference checks, the applicant's interpersonal skills as they relate to the job function and working environment[.]"

157. On November 2, 2020, Defendant Teare scored 29% (out of 100%) on the socialization portion of the mandated PEP.

158. On November 2, 2020, Defendant Wood knew or should have known that Defendant Teare scored a 29% (out of 100%) on the socialization portion of the mandated PEP.

159. Defendant Teare's score of 29% (out of 100%) on the socialization portion of the mandated PEP informed Defendant Wood that Defendant Teare more likely than not lacked the patience, flexibility, tolerance for frustration and rule conformance to be an effective and reasonable law enforcement officer who follows the rules and respects the rights of others.

160. Neither Defendant Wood nor anyone else acting on his behalf conducted the follow-up necessitated by Defendant Teare's 29% score.

161. Any individual with a PEP socialization score of 29% should not be hired as a law enforcement officer.

### B. Defendant Teare Lacked Empathy, Tolerance, Problem Solving Skills, Reliability and Rule Conformance Skills Necessary to be a Law Enforcement Officer and Defendant Wood Knew of those Deficiencies.

162. The customer service portion of the PEP relates to the applicant's "customer care, approach and involvement with customers, empathy, tolerance and problem solving."

163. A low score on the customer service portion of the PEP "correlates with employees have been rated below average by supervisors on . . . attentiveness, reliability and rule conformance."

164. A low score on the customer service portion of the PEP highlights the need for "in-depth . . . follow-up interviews and references."

165. On November 2, 2020, Defendant Teare scored 37% (out of 100%) on the customer service portion of the mandated PEP.

166. On November 2, 2020, Defendant Wood knew or should have known that Defendant Teare scored 37% (out of 100%) on the customer service portion of the mandated PEP.

167. Defendant Teare's score of 37% (out of 100%) on the customer service portion of the mandated PEP informed Defendant Wood that Defendant Teare more likely than not lacked the empathy, tolerance and problem-solving skills to be an effective and reasonable law enforcement officer who complies with the rules and respects the rights of others.

168. Neither Defendant Wood nor anyone acting on his behalf conducted the follow-up necessitated by Defendant Teare's 37% score.

169. Any individual with a PEP customer service score of 37% (out of 100%) should not be hired as a law enforcement officer.

### C. Defendant Teare Lacked Skills Necessary to Effectively and Reasonably Respond to Interpersonal Conflict and Defendant Wood Knew of these Problems.

170. The employment background portion of the PEP relates to the applicant's "rule conformance, interpersonal conflict, longevity, and job performance at past places of employment."

171. A low score on the employment background portion of the PEP "indicates that a significant number of questions were answered in a manner that would make thorough reference checking advisable."

172. On November 2, 2020, Defendant Teare scored 18% (out of 100%) of the employment background portion of the mandated PEP.

173. On November 2, 2020, Defendant Wood knew or should have known that Defendant Teare scored 18% (out of 100%) on the employment background portion of the mandated PEP.

174. Defendant Teare's score of 18% (out of 100%) on the employment background portion of the mandated PEP informed Defendant Wood that Defendant

Teare more likely than not lacked skills necessary to be an effective and reasonable law enforcement officer.

175. Neither Defendant Wood nor anyone acting on his behalf conducted the follow-up necessitated by Defendant Teare's 18% score.

176. Any individual with a PEP employment background score of 18% (out of 100%) should not be hired as a law enforcement officer.

### D. Defendant Wood's Subsequent Failure to Address Defendant Teare's Predisposed Tendencies.

177. Defendant Wood knew of Defendant Teare's low scores on the department mandated PEP and Defendant Wood hired Defendant Teare.

178. Defendant Wood knew of Defendant Teare's low scores on the department mandated PEP and Defendant Wood did nothing to retrain Defendant Teare to address his deficiencies.

179. Defendant Wood knew of Defendant Teare's low scores on the department mandated PEP and Defendant Wood did nothing to require Defendant Teare to undergo any training to address his deficiencies.

180. Defendant Wood knew of Defendant Teare's low scores on the department mandated PEP and Defendant Wood did nothing to address Defendant Teare's deficiencies.

181. Defendant Wood knew of Defendant Teare's low scores on the department mandated PEP and Defendant Wood did nothing to re-educate

Defendant Teare so he would not mistreat and/or abuse members of the public, including Plaintiff, in the way the test scores indicated.

182. While any of Defendant Teare's individual PEP scores, standing alone, may not disqualify Defendant Teare from being a law enforcement officer, taken together – as such scores and testing must be - the totality of the circumstances establish that Defendant Wood should not have entrusted Defendant Teare to be a law enforcement officer because the test scores, taken together as they should be, establish that Defendant Teare lacked skills necessary to be a law enforcement officer.

183. Before February 6, 2023, Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare lacked the skills necessary to be a law enforcement officer.

184. Despite the knowledge that Defendant Teare lacked the skills necessary to be a law enforcement officer, Defendant Wood hired and retained Defendant Teare as a law enforcement officer.

185. While any of Defendant Teare's individual PEP scores, standing alone, may not disqualify Defendant Teare from being a law enforcement officer, taken together – as such scores and testing must be - the totality of the circumstances establish that Defendant Teare had predisposed tendencies to use unreasonable use of force against individuals and/or otherwise disregard the rights of individuals.

186. Before February 6, 2023, Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

187. Despite the knowledge that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals, Defendant Wood hired and retained Defendant Teare as a law enforcement officer.

## V. Defendant Brooks had Predisposed, Unaddressed Tendencies likely to Lead to the Use of Excessive Force and Defendant Wood Knew of those Tendencies.

### A. Defendant Brooks Lacked Empathy, Tolerance, Problem Solving Skills, Reliability and Rule Conformance Skills Necessary to be a Law Enforcement Officer and Defendant Wood Knew of those Problems.

188. As part of Defendant Brooks's employment application, Coweta County Sheriff's Office processed a department mandated PEP on Defendant Brooks on May 12, 2020.

189. PEP testing is used by over 600 law enforcement agencies across the United States to uncover disqualifying criteria and identify high risk applicants.

190. The customer service portion of the PEP relates to the applicant's "customer care, approach and involvement with customers, empathy, tolerance and problem solving."

191. A low score on the customer service portion of the PEP "correlates with employees have been rated below average by supervisors on . . . attentiveness, reliability and rule conformance."

192. A low score on the customer service portion of the PEP highlights the need for "in-depth . . . follow-up interviews and references."

193. On May 12, 2020, Defendant Brooks scored 41% (out of 100%) on the customer service portion of the mandated PEP.

194. On May 12, 2020, Defendant Wood knew or should have known that Defendant Brooks scored 41% (out of 100%) on the customer service portion of the mandated PEP.

195. Defendant Brooks's score of 41% (out of 100%) on the customer service portion of the mandated PEP informed Defendant Wood that Defendant Brooks more likely than not lacked the empathy, tolerance and problem-solving skills to be an effective and reasonable law enforcement officer who follows the rules and respects the rights of others.

196. Neither Defendant Wood nor anyone acting on his behalf conducted the follow-up necessitated by Defendant Brooks's 41% score.

197. Any individual with a PEP customer service score of 41% (out of 100%) should not be hired as a law enforcement officer.

### B. Defendant Brooks Lacked Skills Necessary to Effectively and Reasonably Respond to Interpersonal Conflict and Defendant Wood Knew of these Problems.

198. The employment background portion of the PEP relates to the applicant's "rule conformance, interpersonal conflict, longevity, and job performance at past places of employment."

199. A low score on the customer service portion of the PEP "indicates that a significant number of questions were answered in a manner that would make thorough reference checking advisable."

200. On May 12, 2020, Defendant Brooks scored 42% (out of 100%) of the employment background portion of the mandated PEP.

201. On May 12, 2020, Defendant Wood knew or should have known that Defendant Brooks scored 42% (out of 100%) of the employment background portion of the mandated PEP.

202. Defendant Brooks's score of 42% (out of 100%) on the employment background portion of the mandated PEP informed Defendant Wood that Defendant Brooks more likely than not lacked skills necessary to be an effective and reasonable law enforcement officer who follows the rules and respects the rights of others.

203. Neither Defendant Wood nor anyone acting on his behalf conducted the follow-up necessitated by Defendant Brooks's 42% score.

204. Any individual with a PEP employment background score of 42% (out of 100%) should not be hired as a law enforcement officer.

**C. Defendant Wood's Subsequent Failure to Address Defendant Brooks's Predisposed Tendencies.**

205. Defendant Wood knew of Defendant Brooks's low scores on the department mandated PEP and Defendant Wood hired Defendant Brooks.

206. Defendant Wood knew of Defendant Brooks's low scores on the department mandated PEP and Defendant Wood did not retrain Defendant Brooks.

207. Defendant Wood knew of Defendant Brooks's low scores on the department mandated PEP and Defendant Wood did nothing to require Defendant Brooks to undergo additional training to address his deficiencies.

208. Defendant Wood knew of Defendant Brooks's low scores on the department mandated PEP and Defendant Wood did nothing to address the issues with Defendant Brooks.

209. Defendant Wood knew of Defendant Brooks's low scores on the department mandated PEP and Defendant Wood did noting to re-educate Defendant Brooks so he would not act towards the public, including Plaintiff, in the manner in which the test scores indicated.

210. While any of Defendant Brooks's individual PEP scores, standing alone, may not disqualify Defendant Brooks from being a law enforcement officer, taken together – as such scores and testing must be - the totality of the circumstances

establish that Defendant Wood should not have entrusted Defendant Brooks to be a law enforcement officer because the test scores, taken together as they should be, establish that Defendant Brooks lacked skills necessary to be a law enforcement officer.

211. Before February 6, 2023, Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks lacked the skills necessary to be a law enforcement officer.

212. Despite the knowledge that Defendant Brooks lacked the skills necessary to be a law enforcement officer, Defendant Wood hired and retained Defendant Brooks as a law enforcement officer.

213. While any of Defendant Brooks's individual PEP scores, standing alone, may not disqualify Defendant Brooks from being a law enforcement officer, taken together – as such scores and testing must be - the totality of the circumstances establish that Defendant Brooks had predisposed tendencies to use unreasonable use of force against individuals.

214. Before February 6, 2023, Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

215. Despite the knowledge that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals, Defendant Wood hired and retained Defendant Brooks as a law enforcement officer.

**Count One - 42 U.S.C. § 1983 Excessive Force in Violation of Plaintiff's Fourth & Fourteenth Amendment Rights against Defendant Teare in His Individual Capacity Only**

216. Plaintiff brings Count One against Defendant Teare in his individual capacity only for violations of his rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

217. At all times on February 6, 2023, Defendant Teare was acting under color of law.

218. It is, and has been for decades, clearly established law that law enforcement officers must have at least arguable probable cause in order to detain a person.

219. It is, and has been for decades, clearly established law that law enforcement officers may not use excessive force in effectuating any arrest of an individual (lawful arrests and certainly unlawful arrests).

220. It is, and has been for decades, clearly established law that law enforcement officers may not use any more physical force than is necessary against an individual.

221. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Teare did against Plaintiff on February 6, 2023, is not reasonable when the crime at issue is not severe.

222. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Teare did against Plaintiff on February 6, 2023, is not reasonable when the individual is complying with directives.

223. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Teare did against Plaintiff on February 6, 2023, is not reasonable when the individual holds no threat of escape.

224. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Teare did against Plaintiff on February 6, 2023, is not reasonable when the individual holds no threat of harm.

225. Given Defendant Teare's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was not suspected of committing a severe crime.

226. Given Defendant Teare's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was not a threat to anyone's safety.

227. Given Defendant Teare's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff held no threat of escape.

228. Given Defendant Teare's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was complying with Defendant Teare's and Defendant Brooks's directives.

229. Defendant Teare's act of grabbing Plaintiff's arm on February 6, 2023, was more force than was necessary, given the circumstances.

230. Defendant Teare's act of using a taser against Plaintiff on February 6, 2023, was more force than was necessary, given the circumstances.

231. Defendant Teare, in using a taser against Plaintiff, on February 6, 2023, while Defendant Brooks had his full body weight on Plaintiff's body while forcing his forearm onto Plaintiff's throat, used more force than was necessary to maintain control.

232. Defendant Teare, in using a taser against Plaintiff, on February 6, 2023, while Defendant Brooks had his full body weight on Plaintiff's body while forcing

his forearm onto Plaintiff's throat, used more force than was necessary to effectuate his arrest of Plaintiff.

233. Defendant Teare, in using a taser against Plaintiff, on February 6, 2023, while Defendant Brooks had his full body weight on Plaintiff's body while forcing his forearm onto Plaintiff's throat, used more force than was necessary to accomplish any lawful objective.

234. The act by Defendant Teare of using a taser against Plaintiff on February 6, 2023, was unreasonable, both subjectively and objectively.

235. Defendant Teare knew on February 6, 2023, Plaintiff was not a threat to anyone's, including Defendants', safety.

236. Any reasonable officer would know that, given the nature of Plaintiff's alleged crime and the other circumstances present on February 6, 2023, the use of a taser on a person that was just slammed to the asphalt and then had another officer's full body weight on his or her body, while that other officer forced his or her forearm onto the person's throat was not reasonable.

237. Any reasonable officer would know, based upon education, training, experience, the nature of Plaintiff's alleged crime and the other circumstances present on February 6, 2023, that using a taser on a person that was just slammed to the asphalt and then had another officer's full body weight on his or her body, while

that other officer forced his or her forearm onto the person's throat was more force than was reasonable.

238. Any reasonable officer would know, based upon education, training, experience, the nature of Plaintiff's alleged crime and the other circumstances present on February 6, 2023, that using a taser on a person that was just slammed to the asphalt and then had another officer's full body weight on his or her body, while that other officer forced his or her forearm onto the person's throat was more force than necessary.

239. The acts of Defendant Teare in using physical force against Plaintiff on February 6, 2023, was not reasonable under any circumstances as Plaintiff posed no threat to Defendants or anyone else.

240. The handcuffing and arresting of Plaintiff by Defendant Teare on February 6, 2023, was excessive and unreasonable and in violation of clearly established law.

241. Defendant Teare's use of force against Plaintiff on February 6, 2023, was not necessary to prevent escape because at no time was Plaintiff attempting to escape.

242. On February 6, 2023, when Defendant Teare used physical force against Plaintiff, Plaintiff had not harmed Defendants or any other individual.

243. Defendant Teare's use of force against Plaintiff on February 6, 2023, was not necessary to prevent any harm to Defendants because at no time did Plaintiff pose any risk of harm to Defendants.

244. On February 6, 2023, when Defendants took control of Plaintiff's body, Plaintiff had not harmed Defendants or any other individual.

245. The severity of any crime Plaintiff was alleged to commit on February 6, 2023, did not rise to the standard required for Defendant Teare's use of force to be lawful.

246. At all times on February 6, 2023, Plaintiff did not pose a threat to the safety of Defendants, any officers, or anyone else.

247. At all times on February 6, 2023, Plaintiff was not actively resisting arrest.

248. At all times on February 6, 2023, Plaintiff was not combative.

249. At all times on February 6, 2023, Plaintiff did not attempt to engage in physical conflict with either Defendant Teare, Defendant Brooks or anyone else.

250. At all times on February 6, 2023, Plaintiff was not attempting to evade arrest by flight.

251. Defendant Teare's use of force on February 6, 2023, caused Plaintiff to suffer personal injuries and damages.

252. Even if some use of force was either justified or authorized by law, which it was not, Defendant Teare's use of force on February 6, 2023, was grossly disproportionate to what would have been necessary and reasonable in the circumstances.

253. On February 6, 2023, Defendant Teare used excessive force against Plaintiff that was not necessary under the circumstances.

254. No reasonable officer in Defendant Teare's situation, knowing the same information that Defendant Teare had, would have used force against Plaintiff in the manner that Defendant Teare used against Plaintiff on February 6, 2023.

255. Defendant Teare's actions on February 6, 2023, as alleged, violated Plaintiff's rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

**Count Two - 42 U.S.C. § 1983 Excessive Force in Violation of Plaintiff's Fourth & Fourteenth Amendment Rights against Defendant Brooks in His Individual Capacity Only**

256. Plaintiff brings Count Two against Defendant Brooks in his individual capacity only for violations of his rights secured by the Fourth and Fourteenth Amendments to the United State Constitution.

257. At all times on February 6, 2023, Defendant Brooks was acting under color of law.

258. It is, and has been for decades, clearly established law that law enforcement officers must have at least arguable probable cause in order to detain a person.

259. It is, and has been for decades, clearly established law that law enforcement officers may not use excessive force in effectuating a lawful arrest of an individual (lawful arrests and certainly unlawful arrests).

260. It is, and has been for decades, clearly established law that law enforcement officers may not use any more physical force than is necessary against an individual.

261. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Brooks did against Plaintiff on February 6, 2023, is not reasonable when the crime at issue is not severe.

262. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Brooks did against Plaintiff on February 6, 2023, is not reasonable when the individual is complying with directives.

263. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Brooks did

against Plaintiff on February 6, 2023, is not reasonable when the individual holds no threat of escape.

264. It is, and has been for decades, clearly established law that before using physical force against an individual in the manner in which Defendant Brooks did against Plaintiff on February 6, 2023, is not reasonable when the individual holds no threat of harm.

265. Given Defendant Brooks's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was not suspected of committing a severe crime.

266. Given Defendant Brooks's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was not a threat to anyone's safety.

267. Given Defendant Brooks's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff held no threat of escape.

268. Given Defendant Brooks's POST training and experience, he knew that his use of force against Plaintiff, as alleged in this Complaint, on February 6, 2023, was unreasonable because Plaintiff was complying with Defendant Teare's and Defendant Brooks's directives.

269. Defendant Brooks's act of slamming Plaintiff onto the asphalt on February 6, 2023, was more force than was necessary, given the circumstances.

270. Defendant Brooks's act of slamming Plaintiff onto the asphalt on February 6, 2023, was more force than was necessary to maintain control.

271. Defendant Brooks's slamming Plaintiff onto the asphalt on February 6, 2023, was more force than was necessary to effectuate his arrest of Plaintiff.

272. Defendant Brooks's slamming Plaintiff onto the asphalt on February 6, 2023, was more force than was necessary to accomplish any lawful objective.

273. Defendant Brooks's slamming Plaintiff onto the asphalt on February 6, 2023, was unreasonable, both subjectively and objectively.

274. Defendant Brooks's act of dropping his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary, given the circumstances.

275. Defendant Brooks's act of dropping his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary to maintain control.

276. Defendant Brooks's act of dropping his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary to effectuate his arrest of Plaintiff.

277. Defendant Brooks's act of dropping his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary to accomplish any lawful objective.

278. Defendant Brooks's act of dropping his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was unreasonable, both subjectively and objectively.

279. Defendant Brooks's act of forcing his forearm onto Plaintiff's throat while forcing his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary, given the circumstances.

280. Defendant Brooks's act of forcing his forearm onto Plaintiff's throat while forcing his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary to maintain control.

281. Defendant Brooks's act of forcing his forearm onto Plaintiff's throat while forcing his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt, was more force than was necessary to effectuate his arrest of Plaintiff.

282. Defendant Brooks's act of forcing his forearm onto Plaintiff's throat while forcing his body weight onto Plaintiff's body on February 6, 2023, while

Plaintiff lay on the asphalt, was more force than was necessary to accomplish any lawful objective.

283. Defendant Brooks's act of forcing his forearm onto Plaintiff's throat while forcing his body weight onto Plaintiff's body on February 6, 2023, while Plaintiff lay on the asphalt was unreasonable, both subjectively and objectively.

284. Defendant Brooks, in slamming Plaintiff to the asphalt and then dropping his full body weight onto Plaintiff's body while forcing his (Defendant Brooks's) forearm onto Plaintiff's throat on February 6, 2023, used more force than was necessary to maintain control.

285. Defendant Brooks, in slamming Plaintiff to the asphalt and then dropping his body weight, onto Plaintiff's body while forcing his (Defendant Brooks's) forearm onto Plaintiff's throat on February 6, 2023, used more force than was necessary to effectuate his arrest of Plaintiff.

286. Defendant Brooks, in slamming Plaintiff to the asphalt and then dropping his body weight, onto Plaintiff's body while forcing his (Defendant Brooks's) forearm onto Plaintiff's throat on February 6, 2023, used more force than was necessary to accomplish any lawful objective.

287. Defendant Brooks's act of slamming Plaintiff to the asphalt and then dropping his full body weight onto Plaintiff's body, while forcing his (Defendant

Brooks's) forearm onto Plaintiff's throat on February 6, 2023, was more force than was necessary, given the circumstances.

288. Defendant Brooks's act of slamming Plaintiff to the asphalt and then dropping his full body weight onto Plaintiff's body, while forcing his (Defendant Brooks's) forearm onto Plaintiff's throat on February 6, 2023, was unreasonable, both subjectively and objectively.

289. Defendant Brooks knew on February 6, 2023, Plaintiff was not a threat to anyone's, including Defendants', safety.

290. Any reasonable officer would know that, given the nature of Plaintiff's alleged crime and the other circumstances present on February 6, 2023, slamming a person to the asphalt and then dropping the officer's full body weight onto a person's body while forcing his or her forearm onto the person's throat was more force than was not reasonable.

291. Any reasonable officer would know, based upon education, training, experience, the nature of Plaintiff's alleged crime and the other circumstances present on February 6, 2023, that slamming a person to the asphalt and then dropping the officer's full body weight, onto a person's body while forcing his or her forearm onto the person's throat was more force than was reasonable.

292. Any reasonable officer would know, based upon education, training, experience, the nature of Plaintiff's alleged crime and the other circumstances

present on February 6, 2023, that slamming a person to the asphalt and then dropping the officer's full body weight, onto a person's body while forcing his or her forearm onto the person's throat was more force than necessary.

293. The act of Defendant Brooks in using physical force against Plaintiff on February 6, 2023, was not reasonable under any circumstances as Plaintiff posed no threat to Defendants or anyone else.

294. The handcuffing and arresting of Plaintiff by Defendant Brooks on February 6, 2023, was excessive and unreasonable and in violation of clearly established law.

295. Defendant Brooks's use of force against Plaintiff on February 6, 2023, was not necessary to prevent escape because at no time was Plaintiff attempting to escape.

296. On February 6, 2023, when Defendant Brooks used physical force against Plaintiff, Plaintiff had not harmed Defendants or any other individual.

297. Defendant Brooks's use of force against Plaintiff on February 6, 2023, was not necessary to prevent any harm to Defendants because at no time did Plaintiff pose any risk of harm to Defendants.

298. On February 6, 2023, at the time that Defendant Brooks took control of Plaintiff's body, Plaintiff had not harmed Defendants or any other individual.

299. The severity of any crime Plaintiff was alleged to commit on February 6, 2023, did not rise to the standard required for Defendant Brooks's use of force to be lawful.

300. At all times on February 6, 2023, Plaintiff did not pose a threat to the safety of Defendants, any officers, or anyone else.

301. At all times on February 6, 2023, Plaintiff was not actively resisting arrest.

302. At all times on February 6, 2023, Plaintiff was not attempting to evade arrest by flight.

303. At all times on February 6, 2023, Plaintiff was not combative.

304. At all times on February 6, 2023, Plaintiff did not attempt to engage in physical conflict with either Defendant Teare, Defendant Brooks or anyone else.

305. On February 6, 2023, Defendant Brooks used excessive force against Plaintiff that was not necessary under the circumstances.

306. No reasonable officer in Defendant Brooks's situation, knowing the same information that Defendant Brooks had, would have used force against Plaintiff in the manner that Defendant Teare used against Plaintiff on February 6, 2023

307. Defendant Brooks's use of force caused Plaintiff to suffer personal injuries and damages.

308. Even if some use of force was either justified or authorized by law, Defendant Brooks's use of force on February 6, 2023, was grossly disproportionate to what would have been necessary and reasonable in the circumstances.

309. Defendant Brooks's actions on February 6, 2023, as alleged, violated Plaintiff's rights secured to him by the Fourth and Fourteenth Amendments to the United States Constitution.

**Count Three – 42 U.S.C. § 1983 Deprivation of Civil Rights Under Color of Law: *Monell* Liability of Defendant Wood**

310. At all times alleged, Defendant Wood was the Sheriff of Coweta County.

311. At all times alleged, Defendant Wood was acting under color of law.

312. On February 6, 2023, as Sheriff, Defendant Wood had the nondelegable duty to oversee, implement and execute all procedures and operations of the Coweta County Sheriff's Office, including employee conduct, in compliance with Georgia law and the United States Constitution.

313. On February 6, 2023, as Sheriff, Defendant Wood had the non-delegable duty to establish policies to ensure that Coweta County Sheriff's Office employees did not violate any person's rights afforded to them by the United States Constitution, including the Fourth and Fourteenth Amendment.

314. On February 6, 2023, as Sheriff, Defendant Wood had the non-delegable duty to establish policies to ensure that Coweta County Sheriff's Office officers did not use more force than reasonably necessary.

315. On February 6, 2023, Defendant Wood failed to formulate, implement or execute any policy to ensure that Coweta County Sheriff's Office employees used only reasonably necessary force.

316. On February 6, 2023, Defendant Wood failed to formulate, implement or execute any policy to ensure that Coweta County Sheriff's Office employees did not use excessive force.

317. In the alternative, should such policy exist, on February 6, 2023, Defendant Wood failed to supervise the Coweta County Sheriff's Office employees to ensure that they obeyed or followed such policy.

318. In the alternative, should such policy exist, on February 6, 2023, Defendant Wood failed to supervise the Coweta County Sheriff's Office employees to ensure that they used only reasonably necessary force.

319. In the alternative, should such policy exist, on February 6, 2023, Defendant Wood failed to supervise the Coweta County Sheriff's Office employees to ensure that they did not use excessive force.

320. Defendant Wood knew, due to citizen complaints and other lawsuits, that excessive force by Coweta County Sheriff's Office employees was a chronic problem that existed since at least 2019.

321. On February 6, 2023, Defendant Wood knew that because Coweta County Sheriff's Office employees used excessive force, clearly established law dictated that he, as Sheriff, had to retrain Coweta County Sheriff's Office employees, including Defendant Teare and Defendant Brooks.

322. On February 6, 2023, despite Defendant Wood's knowledge of Coweta County Sheriff's Office employees' use of excessive force, Defendant Wood did nothing to train Coweta County Sheriff's Office employees, including Defendant Teare and Defendant Brooks, even though he knew that the departmental excessive force problem created a substantial risk of harm to any individuals who Sheriff's Office law enforcement officers interact with.

323. On February 6, 2023, despite Defendant Wood's knowledge of Coweta County Sheriff's Office employees' use of excessive force, Defendant Wood did nothing to remedy the problem or even attempt to remedy the problem.

324. On February 6, 2023, despite Defendant Wood's knowledge of Coweta County Sheriff's Office employees' low-test scores on department mandated personnel evaluations, Defendant Wood failed to take any action whatsoever to train

Coweta County Sheriff's Office employees, including Defendant Teare and Defendant Brooks.

325. On February 6, 2023, despite Defendant Wood's knowledge of Coweta County Sheriff's Office employees' predisposed tendencies likely to lead to the use of excessive force, Defendant Wood failed to take any action whatsoever to train Coweta County Sheriff's Office employees, including Defendant Teare and Defendant Brooks.

326. On February 6, 2023, Defendant Wood's acts, omissions, or failures, as alleged, were the result of a policy or the failure to have or implement a policy, and that policy or lack thereof resulted in the violation of Plaintiff's rights afforded to him by the Fourth and Fourteenth Amendments to the United States Constitution.

327. On February 6, 2023, Defendant Wood's acts, omissions, or failures, as alleged, were a proximate cause of damages to Plaintiff.

**Count Four – Defendant Wood's Liability for Misconduct of Deputies Pursuant to O.C.G.A. § 15-16-24**

328. At all times alleged, Defendant Wood was the Sheriff of Coweta County.

329. On February 6, 2023, as Sheriff, Defendant Wood was responsible for overseeing all deputies employed by the Coweta County Sheriff's Office.

330. As Sheriff, Defendant Wood is liable for the misconduct of Coweta County deputies, including Defendant Teare and Defendant Brooks, when the

Sheriff fails to exercise ordinary care and diligence to prevent the condition or act which proximately caused the injury complained of, as provided in O.C.G.A. § 15-16-24.

331. As Sheriff, Defendant Wood is liable for the misconduct of Coweta County deputies, including Defendant Teare and Defendant Brooks, because Defendant Wood failed to exercise ordinary care and diligence to prevent Defendant Teare's and Defendant Brooks's use of excessive force onto Plaintiff on February 6, 2023.

**I. Defendant Wood is liable for Defendant Teare's Misconduct on February 6, 2023.**

**A. Defendant Wood Failed to Exercise Ordinary Care and Diligence as to Defendant Teare's Position as a Law Enforcement Officer.**

332. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his hiring of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

333. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his hiring of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use unreasonable and excessive force against individuals.

334. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his retention of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

335. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his retention of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use unreasonable and excessive force against individuals.

336. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his supervision of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

337. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his supervision of Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use unreasonable and excessive force against individuals.

338. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to retrain Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

339. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to retrain Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use unreasonable and excessive force against individuals.

340. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to re-educate Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

341. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to re-educate Defendant Teare when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use unreasonable and excessive force against individuals.

342. On February 6, 2023, when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals, Defendant Wood failed to exercise ordinary care and diligence in his failure to do anything at all to address those predisposed tendencies.

343. On February 6, 2023, when Defendant Wood knew that Defendant Teare's test scores established that Defendant Teare would more likely than not use

unreasonable and excessive force against individuals, Defendant Wood failed to exercise ordinary care and diligence in his failure to do anything at all to address Defendant Teare's likelihood in using unreasonable and excessive force against individuals.

### B. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Teare's Continued Position as a Law Enforcement Officer on February 6, 2023.

344. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

345. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

346. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

347. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare was allowed to

serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

348. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

349. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

350. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare was allowed to patrol on February 6, 2023.

351. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare was allowed to patrol on February 6, 2023.

352. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare was allowed to patrol on February 6, 2023.

353. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare was allowed to patrol on February 6, 2023.

354. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare was allowed to patrol on February 6, 2023.

355. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare was allowed to patrol on February 6, 2023.

**C. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Teare's Illegal Acts, Including His Use of Excessive Force.**

356. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

357. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

358. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

359. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

360. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

361. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

362. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

363. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

364. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

365. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

366. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

367. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

368. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

369. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

370. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

371. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

372. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

373. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

374. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

375. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

376. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

377. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

378. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

379. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

**D. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Teare's Breach of Duty to Plaintiff.**

380. On February 6, 2023, Defendant Teare owed a duty to Plaintiff to use only a reasonable level of force against Plaintiff.

381. On February 6, 2023, Defendant Teare owed a duty to Plaintiff to use only the requisite amount of force against Plaintiff.

382. On February 6, 2023, Defendant Teare breached these duties by using more force against Plaintiff than necessary.

383. The risks and harms that Defendant Teare caused Plaintiff on February 6, 2023, by Defendant Teare's use of force were within the scope of protection afforded by the duties Defendant Teare owed Plaintiff.

384. As a result of Defendant Teare's acts and omission on February 6, 2023, Plaintiff suffered actual and foreseeable harm.

385. While committing the misconduct on February 6, 2023, as alleged in this Complaint, Defendant Teare, under the employment and agency of Defendant Wood in his capacity as Sheriff, was acting within the scope of his employment with Defendant Wood.

386. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

387. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

388. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

389. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

390. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

391. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

392. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

**E. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Teare's Violations of Plaintiff's Rights Afforded to Plaintiff by the United States Constitution.**

393. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

394. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

395. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

396. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

397. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

398. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

399. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

**F. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Plaintiff's Injuries and Damages.**

400. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

401. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

402. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

403. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare's misconduct,

including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

404. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

405. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

406. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

**G. Defendant Teare's Illegal Acts, Including His Use of Excessive Force were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

407. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

408. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

409. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

410. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

411. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

412. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare illegally stopped Plaintiff on February 6, 2023.

413. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

414. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

415. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

416. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

417. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

418. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used excessive force on Plaintiff on February 6, 2023.

419. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

420. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

421. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

422. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

423. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

424. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used unreasonable force on Plaintiff on February 6, 2023.

425. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

426. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

427. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

428. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

429. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

430. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals,

Defendant Teare used more force than was necessary on Plaintiff on February 6, 2023.

### H. Defendant Teare's Breach of Duty to Plaintiff was a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.

431. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare breached the aforementioned duties owed to Plaintiff on February 6, 2023.

432. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

433. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

434. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023,

in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

435. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating of Defendant Teare, Defendant Teare used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

436. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

437. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution.

**I. Defendant Teare's Violations of Plaintiff's Rights Afforded to Plaintiff by the United States Constitution were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

438. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

439. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

440. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

441. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

442. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare

violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

443. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

444. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution, Defendant Teare violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

**J. Plaintiff's Injuries and Damages were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

445. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

446. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

447. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

448. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

449. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Teare, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

450. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Teare's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Teare's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

451. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Teare complied with Georgia law and with the United States Constitution, Defendant Teare's misconduct,

including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

**K. Pursuant to O.C.G.A. § 15-16-24, Defendant Wood is liable for the misconduct of Defendant Teare as alleged in this Complaint.**

452. Defendant Wood's failure to exercise ordinary care and diligence as Sheriff of Coweta County, Georgia was a proximate cause of Plaintiff's injuries and damages caused by Defendant Teare on February 6, 2023.

453. Plaintiff's injuries and damages caused by Defendant Teare on February 6, 2023, were a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence as Sheriff of Coweta County, Georgia.

454. Pursuant to O.C.G.A. § 15-16-24, Defendant Wood is liable for the Defendant Teare's misconduct on February 6, 2023, as alleged in this Complaint.

**II. Defendant Wood is liable for Defendant Brooks's Misconduct on February 6, 2023.**

**A. Defendant Wood Failed to Exercise Ordinary Care and Diligence as to Defendant Brooks's Position as a Law Enforcement Officer.**

455. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his hiring of Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

456. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his hiring of Defendant Brooks when Defendant Wood knew that

Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals.

457. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his retention of Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

458. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his retention of Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals.

459. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his supervision of Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

460. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his supervision of Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals.

461. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to retrain Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

462. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to retrain Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals.

463. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to re-educate Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed, unaddressed tendencies to use unreasonable and excessive force against individuals.

464. On February 6, 2023, Defendant Wood failed to exercise ordinary care and diligence in his failure to re-educate Defendant Brooks when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals.

465. On February 6, 2023, when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks had predisposed,

unaddressed tendencies to use unreasonable and excessive force against individuals, Defendant Wood failed to exercise ordinary care and diligence in his failure to do anything at all to address those predisposed tendencies.

466. On February 6, 2023, when Defendant Wood knew that Defendant Brooks's test scores established that Defendant Brooks would more likely than not use unreasonable and excessive force against individuals, Defendant Wood failed to exercise ordinary care and diligence in his failure to do anything at all to address Defendant Brooks's likelihood in using unreasonable and excessive force against individuals.

**B. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Brooks's Continued Position as a Law Enforcement Officer on February 6, 2023.**

467. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

468. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

469. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

470. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

471. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

472. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks was allowed to serve as a law enforcement officer with Defendant Wood's office on February 6, 2023.

473. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks was allowed to patrol on February 6, 2023.

474. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks was allowed to patrol on February 6, 2023.

475. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks was allowed to patrol on February 6, 2023.

476. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks was allowed to patrol on February 6, 2023.

477. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks was allowed to patrol on February 6, 2023.

478. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks was allowed to patrol on February 6, 2023.

### C. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Brooks's Illegal Acts, Including His Use of Excessive Force.

479. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

480. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

481. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

482. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

483. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

484. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

485. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

486. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

487. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

488. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

489. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

490. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

491. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

492. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

493. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

494. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

495. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

496. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

497. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

498. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

499. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

500. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

501. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

502. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

### D. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Brooks's Breach of Duty to Plaintiff.

503. On February 6, 2023, Defendant Brooks owed a duty to Plaintiff to use only a reasonable level of force against Plaintiff.

504. On February 6, 2023, Defendant Brooks owed a duty to Plaintiff to use no more force than was necessary and authorized by law against Plaintiff.

505. On February 6, 2023, Defendant Brooks breached these duties by using more force against Plaintiff than necessary.

506. The risks and harms that Defendant Brooks caused Plaintiff on February 6, 2023, by Defendant Brooks's use of force were within the scope of protection afforded by the duties Defendant Brooks owed Plaintiff.

507. As a result of Defendant Brooks's acts and omission on February 6, 2023, Plaintiff suffered actual and foreseeable harm.

508. While committing the misconduct on February 6, 2023, as alleged in this Complaint, Defendant Brooks, under the employment and agency of Defendant Wood in his capacity as Sheriff, was acting within the scope of his employment with Defendant Wood.

509. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023,

in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

510. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

511. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

512. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

513. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023,

in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

514. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

515. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

**E. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Defendant Brooks's Violations of Plaintiff's Rights Afforded to Plaintiff by the United States Constitution.**

516. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks violated

Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

517. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

518. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

519. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

520. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

521. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals,

Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

522. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

**F. Defendant Wood's Failure to Exercise Ordinary Care and Diligence was a Proximate Cause of Plaintiff's Injuries and Damages.**

523. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

524. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

525. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

526. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

527. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

528. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

529. As a proximate result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

### G. Defendant Brooks's Illegal Acts, Including His Use of Excessive Force were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.

530. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

531. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

532. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

533. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

534. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

535. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks illegally stopped Plaintiff on February 6, 2023.

536. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

537. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

538. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

539. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

540. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

541. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used excessive force on Plaintiff on February 6, 2023.

542. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

543. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

544. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

545. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

546. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

547. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used unreasonable force on Plaintiff on February 6, 2023.

548. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

549. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

550. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

551. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

552. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

553. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals,

Defendant Brooks used more force than was necessary on Plaintiff on February 6, 2023.

**H. Defendant Brooks's Breach of Duty to Plaintiff was a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

554. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

555. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

556. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

557. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

558. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

559. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks used unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

560. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks used

unreasonable, unnecessary and excessive force against Plaintiff on February 6, 2023, in violation of the United States Constitution, the Georgia Constitution, standard law enforcement practices and procedures and other laws.

**I. Defendant Brooks's Violations of Plaintiff's Rights Afforded to Plaintiff by the United States Constitution were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

561. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

562. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

563. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

564. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks

violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

565. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

566. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

567. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks violated Plaintiff's rights afforded to him by the United States Constitution on February 6, 2023.

**J. Plaintiff's Injuries and Damages were a Foreseeable Result of Defendant Wood's Failure to Exercise Ordinary Care and Diligence.**

568. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the hiring of Defendant Brooks, Defendant Brooks's

misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

569. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the retention of Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

570. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in the supervision of Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

571. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by retraining Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

572. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence by re-educating Defendant Brooks, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

573. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in doing anything at all to address Defendant Brooks's

predisposed tendencies to use unreasonable and excessive force against individuals, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

574. As a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence in ensuring that Defendant Brooks complied with Georgia law and with the United States Constitution, Defendant Brooks's misconduct, including his use of excessive force, caused Plaintiff personal injuries and damages on February 6, 2023.

**K. Pursuant to O.C.G.A. § 15-16-24, Defendant Wood is liable for the misconduct of Defendant Brooks as alleged in this Complaint.**

575. Defendant Wood's failure to exercise ordinary care and diligence as Sheriff of Coweta County, Georgia was a proximate cause of Plaintiff's injuries and damages incurred by Defendant Brooks on February 6, 2023.

576. Plaintiff's injuries and damages incurred by Defendant Brooks on February 6, 2023, were a foreseeable result of Defendant Wood's failure to exercise ordinary care and diligence as Sheriff of Coweta County, Georgia.

577. Pursuant to O.C.G.A. § 15-16-24, Defendant Wood is liable for the Defendant Brooks's misconduct on February 6, 2023, as alleged in this Complaint.

WHEREFORE, Plaintiff prays:

A. That all special and general damages be awarded to Plaintiff in an amount shown by the evidence and determined by the judge;

B. That punitive damages be awarded against Defendants when allowable by law in an amount to be determined by the judge to punish this Defendants and deter Defendants and others from similar misconduct in the future;

C. That a bench trial be had on all issues permitted;

D. That attorneys' fees and expenses of litigation be awarded as authorized under the law;

E. Such other further equitable or monetary relief as the Court deems just and proper.

Dated: September 9, 2024

**HALL & LAMPROS, LLP**

*/s/ Andrew Lampros*
Andrew Lampros
Ga. Bar #432328
Ligia-Ioana Mensah
Ga. Bar #184438

300 Galleria Pkwy SE
Suite 300
Atlanta, GA 30339
Tel.: (404) 876-8100
Fax: (404) 876-3477
alampros@hallandlampros.com
ligia@hallandlampros.com

*Attorneys for Plaintiff*